**United States District Court**
**District of Connecticut**

| | | |
|---|---|---|
| **VERMONT MUTUAL INSURANCE** | : | |
| **COMPANY,** | : | |
| | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:16-CV-00034 (VLB)** |
| **v.** | : | |
| | : | **March 20, 2017** |
| **DEBRA SAMSON and** | : | |
| **MATTHEW HEBERT,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OF DECISION GRANTING PLAINTIFF VERMONT MUTUAL
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 16]**

I.   **Introduction**

Plaintiff Vermont Mutual Insurance Company ("Vermont Mutual") brings

this action for declaratory relief pursuant to Connecticut General Statutes § 52-29.

Vermont Mutual has now moved for summary judgment pursuant to Federal Rule

of Civil Procedure 56, asking the Court to hold as a matter of law that Defendant

Debra Samson's homeowner's insurance policy created no duty to defend Ms.

Samson in a lawsuit filed against her by Defendant Matthew Hebert, and no duty

to indemnify her for a $125,000 judgment entered in that case.  [Dkt. No. 16 at 2].

Vermont Mutual also seeks dismissal of Defendants' counterclaims for

declaratory relief, breach of contract, the violation of the Connecticut Unfair

Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et seq.*, the

Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-

315, *et seq.*, bad faith, and unjust enrichment.  [Dkt. No. 16 at 15-20].

For the reasons that follow, Vermont Mutual's Motion for Summary

Judgment is GRANTED in all respects.

II.   <u>Background</u>

Vermont Mutual issued Policy No. HO170824444, Form HO 00 03 04 91 (the "Policy"), to Paul and Debra Samson, which covered the period from October 6, 2013 to October 6, 2014.  [Dkt. No. 17-4, Declarations].  This policy covered the residence located at 604 Stone Road, Windsor, CT 06095.  *Id.*  The Policy provided the following liability coverage:

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" [1] . . . caused by an "occurrence"[2] to which this coverage applies, we will:
>
>   1.  Pay up to our limit of liability for the damages for which the "insured" is legally liable.  Damages include pre-judgment interest awarded against the "insured"; and
>
>   2.  Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

[Dkt. 17-8, Homeowners 3 – Special Form, at 10].

The Policy contains an exclusion for bodily injury that arises out of or in connection with a business.  [Dkt. No. 17-4, Homeowners 3 – Special Form, at 11]. The relevant section ("Section II – Exclusions") reads as follows:

> Coverage E – Personal Liability . . . [does] not apply to "bodily injury" . . . arising out of or in connection with a "business"[3] engaged by an "insured." This exclusion applies but is not limited to an act or omission, a service or

---

[1] "Bodily injury" means "bodily harm, sickness or disease, including required care, loss of services and death that results."  [Dkt. No. 17-4, Homeowners 3 – Special Form, at 1].

[2] "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . 'Bodily Injury.'" [Dkt. No. 17-4, Homeowners 3 – Special Form, at 1].

[3] "Business" is defined to include a "trade, profession or occupation."  [Dkt. No. 17-4, Homeowners 3 – Special Form, at 1].

duty rendered, promised, owed or implied to be provided because of the nature of the "business."

*Id.* The Policy is additionally subject to Endorsement HO 04 96 04 91, which specifically addresses coverage for a home day care business. It states, in relevant part:

> If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business." Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:
>
> 1. Does not provide Section II – Liability Coverages because a "business" of an "insured" is excluded under exclusion 1.b. of Section II – Exclusions[.]

[Dkt. No. 17-4, No Section II – Liability Coverages for Home Day Care Business]. The parties do not dispute that Ms. Samson's home day care constitutes a "business" as defined by the Policy. [Dkt. No. 25 at 7]. In the Samsons' application for this policy, they indicated that they did not conduct any business on the premises—including a day care business—and that they did not keep any animals on the premises. [Dkt. No. 17-3].

Defendant Matthew Hebert initiated the underlying action in this matter via a complaint dated May 29, 2014, in the Judicial District of Hartford, Docket Number HHD-CV-14-605-1671-S. [Dkt. No. 17-5]. Ms. Samson was defaulted for failing to appear for a trial management conference, and judgment was entered in Mr. Hebert's favor. [Dkt. No. 17-2]. The complaint in the underlying case alleged that Ms. Samson operated a home day care at the premises insured by Vermont

Mutual.  [Dkt. No. 17-5 ¶¶ 2-3].  It further alleged that on May 9, 2013, while Mr. Hebert was retrieving his child from this day care, Ms. Samson's dog bit Mr. Hebert, causing serious, painful, and disabling injuries.  *Id.* ¶¶ 5-7.

At a subsequent hearing on damages, the court awarded Mr. Hebert $125,000.  *Id.*  During the damages hearing, the court made the following factual findings:  (1) Ms. Samson operated a home day care center and provided care for Mr. Hebert's young son; (2) Ms. Samson kept two or three recently rescued German Shepherds on the premises; (3) one of those dogs attacked Mr. Hebert when he entered Ms. Samson's home to pick up his child; (4) the attack caused serious physical injuries to Mr. Hebert's face; (5) the attack was distressing to Mr. Samson and his family, because his child witnessed the attack, and Mr. Samson and his wife were forced to withdraw the child from Ms. Samson's care; and (6) Mr. Hebert retains permanent scars on his face from the attack.  *Id.*

Mr. Hebert made a demand to Vermont Mutual Insurance Company that it pay the judgment rendered against Ms. Samson.  [Dkt. No. 17-6 ¶ 11].  Vermont Mutual disclaimed coverage under the policy and did not provide Ms. Samson a defense in the underlying action.  *Id.* ¶ 10.  Vermont Mutual similarly has not indemnified Ms. Samson as to the judgment entered against her.  *Id.* ¶ 12.

Based on these undisputed facts, the parties have asked the Court to determine whether the judgment in the underlying action is a covered loss, and whether the Policy required Vermont Mutual to defend Ms. Samson.  There is no evidence in the record that anyone brought a declaratory judgment or other

action in Connecticut Superior Court to determine whether there is coverage under the policy.

III.   <u>Standard of Review</u>

Pursuant to Federal Rule of Civil Procedure 56(a), "a party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Because the Defendants have not disputed any of the facts presented by the Plaintiff, the Court is tasked solely with determining whether these undisputed facts entitle the Plaintiff to declaratory judgment as a matter of law.

IV.   <u>Discussion</u>

A. <u>Policy Coverage</u>

The parties do not dispute that Plaintiff's injury is a "bodily injury" . . . caused by an "occurrence" under the policy.  [Dkt. No. 16; Dkt. No. 25 at 5].  They similarly do not dispute that Ms. Samson's home day care business was a "business" as defined by the policy.  [Dkt. No. 25 at 7].  They disagree, however, about whether the injury arose out of or in connection with Ms. Samson's home day care business, triggering the Policy's business exclusion.  Plaintiff argues that to "arise out of or in connection with a business," an injury need only bear a causal relationship with the business.  Defendant counters that coverage is not excluded, because to be excluded an injury must arise out of a business's

"operative activity"—here, the care and supervision of children—and that a dog bite is incident to the non-business pursuit of owning and keeping a dog. *Id.* at 9.

An insurance policy "is to be interpreted by the same general rules that govern the construction of any written contract." *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 372-73 (2008).  Any contract "must be construed to effectuate the intent of the parties, which is determined from the language used and interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Murtha v. City of Hartford*, 303 Conn. 1, 7-8 (2011) (quoting Remillard v. Remillard, 297 Conn. 345, 355 (2010)); *Harbour Pointe, LLC v. Harbour Landing Condominium Ass'n, Inc.*, 300 Conn. 254, 260 (2011) ("In ascertaining the contractual rights and obligations of the parties, we seek to effectuate their intent, which is derived from the language employed in the contract, taking into consideration the circumstances of the parties and the transaction."  (quotations omitted)).

Where the language of a contract is unambiguous, a court "must give the contract effect according to its terms." *Harbour Pointe*, 300 Conn. at 260 (quoting *Cantonbury Heights Condominium Ass'n Inc. v. Local Land Dev., LLC*, 273 Conn. 724, 734-35 (2005)).  A contract is unambiguous when "its language is clear and conveys a definite and precise intent . . . .  The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity."  *Id.* "[T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." *Id.*

Where the language of an insurance policy is ambiguous, such language must be construed against the insurance company that drafted the policy. *See Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.*, 247 Conn. 801, 806 (1999). However, any ambiguity in a contract "must emanate from the language used by the parties" and "a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself." *Murtha*, 300 Conn. at 9. "The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so . . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." *Harbour Pointe*, 300 Conn. at 261 (quoting *Cantonbury Heights*, 273 Conn. at 735).

The Connecticut Court of Appeals has held that the policy language "arising out of the business pursuits . . . of an insured" "establishes an expansive standard of causation between the incident giving rise to a claim for coverage and the insured's business pursuits." *See Nationwide Mut. Ins. Co. v. Pasiak*, 161 Conn. App. 86, 95 (2015); *see also Town of Monroe v. Discover Prop. & Cas. Ins. Co.*, 169 Conn. App. 644, 651 (2016) ("[T]he phrase 'arose out of' is defined broadly in Connecticut."); *Allstate Ins. Co. v. Reyes*, No. HHDCV156063676S, 2016 WL 7975861, at *3 (Conn. Super. Ct. Dec. 8, 2016) ("The term 'arising out of' is given an expansive interpretation under our law. The nexus between an accident, loss or injury is found to exist when it 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the excluded use or activity."). "[U]se of ['arising out of'] does not require a direct proximate causal connection

but instead merely requires some causal relation or connection." *Pasiak*, 161 Conn. App. at 99 (quoting 7 S. Plitt et al., Couch on Insurance § 101:52 (3d Ed. Rev. 2013)) (holding that the business exclusion applied because the injured party would not have been injured if she had "not been at the office performing her duties as an employee of the defendant's business").

Defendants argue that the Court should refrain from ruling on the instant motion pending resolution of an appeal to the Connecticut Supreme Court of *Pasiak*.  While *Pasiak* defines "arising out of" specifically in the context of a homeowner's policy business exclusion, that definition was drawn from the definition of "arising out of" provided by the Connecticut Supreme Court in the automobile insurance context.  *See, e.g.*, *New London Cty. Mut. Ins. Co. v. Nantes*, 303 Conn. 737, 754 (2012) (defining "arising out of" as "was connected with," "had its origins in," "grew out of," "flowed from," or "was incident to"); *Bd. of Educ. of City of Bridgeport v. St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 48 (2002) (holding that "arising out of" did not require proximate causation). Further, the outcome of the *Pasiak* appeal is not dispositive here because the facts are distinguishable.  The injury suffered in *Pasiak*—being held hostage by an intruder and the employee's supervisor—is not a usual consequence of working out of an employer's home office.  *See Pasiak*, 161 Conn. App. at 99.  In this case, the causal connection between a home day care business and a parent injured by a pet kept in that home is far less attenuated—parents commonly go to home day care businesses, and homes routinely have pet dogs living in them.

Defendants cite cases from other states for the proposition that the "operative activity" involved in running a home day care is the care and supervision of children, suggesting that injuries not incident to the care and supervision of children—like inviting an adult into a home or keeping a dog—should not be covered by a business exclusion.  [Dkt. No. 25 at 8-9].  However, none of the cited cases quite support the Defendants' argument.  In *Fox ex rel. Fox v. Lumber Ins. Co.*, 58 Mass. App. Ct. 1102 (2003), for example, the court stated that a home day care provider's business was to "care for her charges and prevent them from being harmed," but stated clearly that a child's injury from a dog bite in a home day care would fall within the business exception.  Similarly, in *Am. Family Mut. Ins. Co. v. Moore*, 912 S.W.2d 531, 536 (Mo. Ct. App. 1995), the court held that "[t]he introduction of the dog with vicious propensities into the babysitting environment and in close proximity to small children, who were on the premises pursuant to a business pursuit, cannot be said to be an activity incident to a non-business pursuit."  Finally, when citing *Lamb v. Sec. Mut. Ins. Co.*, 278 A.D.2d 855, 856 (N.Y. App. Div. 2000) for the proposition that "the actions of the dog and plaintiffs' alleged failure to supervise the dog properly were not incident to babysitter's business pursuit, i.e., the care of the child," the Defendants neglect to note that the only claims that fell outside of the business exemption were those alleged against the babysitter's *parents* for failure to supervise their dog properly.  Here, no third parties living in Ms. Samson's home are named as parties.

Moreover, none of the cited cases suggest that where a home day care provider's dog bites a *parent*, the resulting injury should not be excluded as incident to a business activity. It generally is not possible to manage a home day care without inviting parents and guardians into the home as they drop off and pick up their children. The fact that numerous people—both adults and children—are invited into a home day care on a regular basis increases the risk that any of those people might be injured. The identity of the injured party and the manner of injury suffered is partly a product of this volume of activity. This, in turn, is part of the reason why insurance companies exclude coverage for business activities from homeowners insurance policies—to manage risk and set premiums accordingly. *See Am. Ins. Co. v. Saulnier*, 242 F. Supp. 257, 261 (D. Conn. 1965) ("The function of an insurance policy is . . . to divide the economic duty to make reparation to the injured party. A[n] insurance company's problem is an underwriting one, not a moral one. It assumes risks from motives of business gain. It carefully calculates the risks involved and makes this calculation the basis of the premium exacted.").

Connecticut General Statutes § 22–357 imposes strict liability on the owner or keeper of any dog that does damage to the body or property of any person. Liability attaches whether or not the owner knew the dog was aggressive or violent. Additionally, a business owner owes its invitees a duty to keep its premises in a reasonably safe condition, *DiPietro v. Farmington Sports Arena, LLC*, 306 Conn. 107, 116 (2012), and a duty not to maintain hazards—like an aggressive dog—on the premises, *cf. Hartford Cas. Ins. Co. v. Litchfield Mut. Fire*

*Ins. Co.*, 274 Conn. 457, 466 (2005) (finding duty to defend under commercial policy where business invitee was bitten by dog that employee should have known was aggressive and violent under the circumstances).  Mr. Hebert was a business invitee when he was bitten by Ms. Samson's dog, because he was invited into Ms. Samson's home for a purpose directly related to Ms. Samson's business of running a home day care:  retrieving his child from her care.  *See Gargano v. Azpiri*, 110 Conn. App. 502, 506 (2008) ("A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.").  The "operative activity" here is the care and supervision of children who are too young to transport  themselves.  As such the children's parents were invited onto the premises to drop off and pick up their children and pay Ms. Sampson for her services.  Because the parents of her charges entered the premises for a purpose directly related, indeed essential, to the care of her charges, she owed a duty to the children as well as their parents to maintain the premises in a reasonably safe condition, and not to keep an aggressive and violent dog on the premises.

The Court holds that the decision in the *Pasiak* appeal would not inform its decision here and thus deferral of its decision in this case is not warranted.  The Court further holds that Mr. Hebert's injury was incident to a business activity, and coverage is therefore excluded under the Policy.

### B.  Duty to Defend and Counterclaims

Defendants assert counterclaims for declaratory judgment, breach of contract, violations of CUIPA and CUTPA, bad faith, and unjust enrichment.  All of

these claims depend on the Court finding that Vermont Mutual had a duty to defend or indemnify Ms. Samson under the Policy.  Defendants do not dispute that some counterclaims must be dismissed if the Court determines that coverage for Mr. Hebert's injury is excluded under the Policy.  [Dkt. No 25 at 15-16].  Instead, they argue that the Court should not grant summary judgment on the Plaintiff's counterclaims because the duty to defend is broader than the duty to indemnify.  [Dkt. No 25 at 15-16].

"In construing the duty to defend as expressed in an insurance policy, '[t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage.  If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability . . . .  It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint . . . .  Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend.'"  *Hartford Cas.*, 274 Conn. at 463-64 (quoting *Bd. of Educ. of City of Bridgeport*, 261 Conn. at 40).  "If an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured."  *Moore v. ContinentalCasualty Co.*, 252 Conn. 405, 409 (2000).

"[T]he duty to defend means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury covered by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from anyone

else, which indicates, or even demonstrates, that the injury is not in fact covered. The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is groundless." *Hartford Cas.*, 274 Conn. at 464 (quoting *Keithan v. Massachusetts Bonding & Ins. Co.*, 159 Conn. 128, 139 (1970)).  "An insurer, therefore, is not excused from its duty to defend merely because the underlying complaint does not specify the connection between the stated cause of action and the policy coverage."  *Hartford Cas.*, 274 Conn. at 464.

The underlying case's complaint alleges, in relevant part, that Ms. Samson operated a home day care at the insured property, and that while present at the property for the purpose of picking up his son from the home day care, Mr. Hebert was bitten by one of Ms. Samson's dogs.  [Dkt. No. 17-5 ¶¶ 2-3, 5-7].  In this case, the complaint's allegations are not materially different from the factual findings made in the underlying case's damages proceedings or the undisputed facts presented on summary judgment.  Therefore, for the same reasons Vermont Mutual has no obligation to indemnify Ms. Samson based on the facts before this Court, it similarly has no duty to defend based on the allegations in the complaint.  Because all of the Defendants' counterclaims depend on the insurer's failure to pay for a covered loss, and the Policy does not impose on Vermont Mutual any duty to defend or indemnify Ms. Samson, Defendants' counterclaims must be DISMISSED.

V.    <u>Conclusion</u>

For the foregoing reasons, Vermont Mutual's Motion for Summary Judgment is GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  March 20, 2017